We're going to go on to the last case of the day. It is Appeal No. 2268, United States v. Bicknell. And good afternoon, Mr. Mose. Good afternoon, Your Honor. May it please the Court. James Mose for Appellant, Mr. Gilbert McBride presents two issues today on appeal. First, the government violated Brady and its progeny by failing to disclose a cooperation plea agreement with Gilbert's son and co-defendant, Michael Bicknell. And second, the court made inconsistent findings at sentencing, which consistent with this court's decisions require resentencing for clarification. I'd like to start by discussing the government's failure to disclose the cooperation plea agreement in violation of Brady. To begin, the agreement was not clearly disclosed on the record, nor was it reasonably discoverable by reasonable diligence. The agreement was not disclosed and was disclaimed by all parties during the duration of the sentencing hearing. Reasonable diligence, while typically thought of as extending to an open file system, has not been held to extend beyond that. And in this case, if the docket is to be considered an open file system, the agreement was not docketed. It was not contained within that system. Moreover, AUSA Matthew herself simply consulted the docket to determine whether the plea agreement she was witness to and signed on behalf of the government existed. She did not check her own files to determine whether that agreement existed before proceeding to have Michael disclaim the agreement at sentencing, and she herself disclaimed it. If she had exercised reasonable diligence and checked her file system, we wouldn't be here today discussing a possible Brady violation. Mr. Mose. Now, sir. Could you? Go ahead. Do I have this? Go ahead, Judge. Michael Bicknell, as I understand it, admitted while he was on the stand that he was testifying in hope of getting a break, correct? Correct, Your Honor. So given that, which I'm sure would not have surprised the district judge, what would access to the written agreement have added? Your Honor, we believe that although he had mentioned pleading for hoping of a time cut, that is different than discussing the existence of an agreement executed with the government, especially in light of the fact that Michael said one didn't exist. And unlike similar cases in which an agreement was not disclosed, such as Morris or Braun, in these cases, knowing the fact that there was an agreement, not necessarily even the specifics of that agreement, but what Michael's understanding of his benefits to be received and his consequences for not offering favorable testimony at sentencing, we were unaware of any of that existing to further cross-examine for the impeachment purposes. What would that? I'm sorry. Go ahead. I had the same question. How would the revelation that he had a cooperation agreement with the of a reasonable probability of altering the outcome? Your Honor, we believe that Michael was the key witness offered by the government. He was the only non-officer witness. He provided non-cumulative testimony. And so his credibility and the court's determination in finding him credible was really key to her rulings on safety valve, the initial setting of the floor of the court's discretion in sentencing. And So although he mentioned for hoping for a time cut, which is a possible precursor to an executed plea agreements, not being able to really probe Michael on what that agreement meant to him in offering this testimony and allowing to explore why he would be willing to fabricate that testimony is crucial and is a reasonable probability that had that been further and fully explored more than the district's court receiving the written copy from the clerk perhaps, that would have had a reasonable outcome of a different credibility determination. Mr. Mose, when you go to the back end of the proceeding and everybody realizes the mistake here, that was in the, of course he pled guilty pursuant to a written cooperation agreement that way. Given, you're not, we don't have a jury situation here, right? It's the district judge and it's the district judge making a sentencing determination. At that point in time, it was clear that of course he testified as a cooperating witness today. Um, and he, he essentially said he did when he said he was testifying to get a sentencing cut, um, or a sentencing reduction. So I don't, I don't think there's any question. You're right. The agreement should have been turned over. Um, but I just have a very difficult time seeing how any air here is not, is not harmless or put differently. How is the, um, put it in Brady terms, how's the agreement material? I mean, it was as clear as day by the, by the end of this. Of course he tested the government, called him as a witness. Uh, although by the end of this, this was clear as day that there was a signed and executed agreement. Again, when the judge earlier made the safety valve determination that had not yet been determined. So we were still operating all parties at the hearing or operating under the assumption it was simply him, Michael hoping for a time cut versus an executed agreement. And moreover, although this was not in front of a jury when the context, wouldn't you agree? Absolutely clear. He's testifying as on behalf of the government. He's testifying. He didn't, in other words, he didn't spontaneously take the stand at the sentencing hearing. Yes, he's hoping and testifying on behalf of the government, but hoping for a, for a time cut separated from any executed signed plea agreement containing benefits offered is, is very different than just hoping that the government may decide on the, on their whims to, to offer you that time cut. And in US versus Morris, this court really focused on that. Although an agreement wasn't disclosed, the testifying cooperating witness fully, um, testified that the government had offered to drop two of their charges if, if they cooperated, um, and had testified that the government was going to ask the court for leniency and below guideline sentencing. Michael did not offer any of that information while testifying to indicate that this was anything other than him feeling that if he was going to testify at, at the sentencing that the government might decide to help him in the government, nor Michael really indicated there was anything further. The terms of this agreement though, are really no different from that, right? The government retained complete discretion, correct? Correct, your Honor. But beyond the actual terms of the agreement, again, it is important that without knowing there was an agreement and that those terms existed, even if it is still up to the government's discretion, Gilbert and his counsel lost the attorney, lost the If I can follow up though on what Judge Scudder was asking about, um, the, the mistake was known by the end of this hearing, well before the end of the hearing, and what I didn't, this is the dog that didn't bark, right? Um, I would have expected if this were meaningful to the decision maker, to the district judge, or to defense counsel, that one or both of them would have gone ballistic about this kind of a screw up, okay? I mean, I know I would have in the district court. Um, it absolutely should have been disclosed, but in trying to look for consequences here, I don't see the two actors in, who would be most justified in, uh, raising cane about this, doing so. What do I make of that? Your Honor, uh, while the, the court did not raise cane about the discovery, the court, as the government, um, contended in their brief, if it considered it material, it would have multiple times interrupted, uh, sent testimony and proceedings to inquire about any written agreement, which the court did, although that was prior, that was prior to the discovery of it. We do not know why Michael's counsel did not, um, upon discovery, jump out of his seat and raise cane, that this should have been disclosed. Um, however, at that time, upon discovery, the court very quickly, um, labeled it an interesting procedural quirk, which seems to indicate that in their mind, it's harmless. And again, in, in moving forward and throughout the proceedings, we can only assume that the trial, uh, attorney was weighing in that moment whether it was worth, um, raising another Brady, um, objection in that moment after seeing the court clarify it as a, a procedural quirk heading into the, the continuing, uh, trial. Well, the procedural quirk, the context of that was there, there was clearly, uh, it should have been on, it should have been a docket entry on this too. Yes, it should have been docketed. Right? So it, we're responsible, I mean, the docket's maintained by the district court, maybe it's a district court, um, mistake or oversight, maybe the government bore some responsibility, but that's the context of the, of the reference, right? Correct, Your Honor. And, and even if, uh, though he did not, um, object in that moment, uh, we feel that this still does not preclude raising the issue. It's still been raised prior to, to sentencing regarding Michael's cooperation. Um, and again, even if it's not been, been ruled on, we still feel that under, um, the stricter standard of a, of a plain error that this Brady violation does overlap nicely with that, um, and that it really boils down to the material and the prejudicial nature of it. And that in this case, it was a cooperating plea agreement with a key witness who provided non-cumulative testimony. Um, and that we as Gilbert lost out on the fundamental right, uh, to, to cross examine that witness, which is a due process issue as noted in Giglio. And that is truly regardless of what was contained in the agreement, uh, Brady and Giglio are concerned with that being handed over to the defense ahead of time so they can make use of it. And that is the prejudicial nature of the issue. Um, with that, thank you, your honors. I will give you, um, your two minutes for rebuttal. Thank you, your honor. You're very welcome. Thank you. Uh, okay. Mr. Kinstra. May I please the court. Good afternoon, your honors. Jeff Kinstra on behalf of the United States. The defendant hasn't established any Brady violation in this case and much less has he done so in plain error review. And I'd like to begin there for a moment, although that didn't come up in the opening argument and that this court's review is only for plain error because this isn't something that the defendant raised at any point throughout the district court proceedings. Certainly not after your honors have noted that the issue arose at sentencing when the district court itself raised the issue of the plea agreement and at no prior point in the case did the trial counsel ever claim that he didn't have the documents that now form the basis for his claim on appeal. Mr. Kinstra, I, um, I, with all respect, I thought you were going to start by saying I'm not here to defend the nondisclosure. I thought you were going to say there's absolutely no question this agreement should have been turned over zero, um, in advance of the hearing, but that doesn't mean there's reversible error. I must say that's, I thought those would be the first words out of your mouth. I, I agree with your honor's take on that. This is, it was, it was a mistake on our end. Now that doesn't mean, how does this, how's this happen? The very, the, the, and I'm not, it's not about a particular individual, but the prosecutor that was doing the hearing was the prosecutor who signed the cooperation agreement. That is correct. So the, the cooperation agreement, I have, I mean, I have to believe, at least having done a little bit of this in the past, was probably within arm's reach in a, in a file during the hearing. So I, I can explain how that came about. Undoubtedly, this is an unfortunate circumstance. It's the sort of thing that can only happen when there are multiple different unusual circumstances that come together at once. At the, the change of plea hearing, um, the, the defendant signed the plea agreement at the hearing. It's not at all unusual that the government will tender a change or a plea agreement, but at the hearing, the defendant won't sign it. They'll go forward and plead open. The, the district court for its part is extraordinarily reliable and properly at filing the materials that are tendered to it for filing. Certainly for the government's part, we bear responsibility as well. We didn't recognize after, after the change of plea hearing that the, the plea agreement didn't hit the docket. That's on us. When this came at issue five months later, simply put, the, the prosecutor just, we, we didn't remember. And we, we referred to the docket, which, you know, this is a problem we've never encountered before. We didn't anticipate that the docket would be incomplete. And so we did rely on that. And it's our mistake. Um, you know, we, we have our obligations as well as our own self-interest, of course, in making sure that we receive the benefit of plea agreements. And so this is a circumstance that simply hasn't come up before. We, we regret the oversight in that, that respect, but... You know, you, you, you argued that the district court knew of the plea agreement before it made its ruling. You argued that the district court could have inquired about it further if it considered the agreement significant. But my view is that that argument discounts that the late reveal deprived Bicknell of the opportunity to cross-examine Michael as to the agreement. How can we say that the district court had an opportunity to consider the evidence if that consideration did not include allowing the defendant to develop the evidence and demonstrate its significance to the court? So a couple things. First is that the record, the sentencing transcript does reflect that as the judge said, that this investigation that the court staff conducted took place over the recess. And so the court came back from the recess, concluded the testimony, made a safety valve ruling, and then without any gap in the record, raised the issue that the court staff had found the plea agreement. So it does show that the district court was aware of the agreement. Had it deemed that agreement material to this defendant's sentencing as compared to just Michael's sentencing, it could have raised that earlier. But as has been alluded to already, I think the fact that the district court didn't raise it, and same with trial counsel having not raised it, they simply didn't see that the plea agreement itself was really materially different from what Michael had already testified to. I may be reading between the lines too much, and it's really neither here nor there, but I thought what happened here is that it really seemed quite odd that it wasn't on the docket. It's very clear that Michael's on the witness stand as testifying as a cooperating witness. And they used the lunch hour to just kind of hunt down the oddity, and they realized there was a mistake made with the docketing. It just seemed fishy. In other words, they're just really strange that there's a guy testifying clearly in a cooperating capacity who pled open. Maybe, but that's not an everyday occurrence. So you'd think there's an agreement somewhere. Where's the agreement? Right. And I think that's probably how the court staff located it and what brought their In terms of materiality, there are a couple of reasons why this wouldn't meet the Brady standard for materiality. The first is that it's only impeaching, and as this court has repeatedly recognized, materials that are impeaching as opposed to exculpatory typically won't meet the Brady materiality standard. And the second, as we've discussed repeatedly this morning, is that Michael candidly admitted that he was testifying in hopes of receiving a time cut. Mr. Kainstra, I'm trying to, well, let me just state a general view. I am reluctant to reverse district court decisions on grounds not raised before the district court. But I'm having real trouble figuring out how we ought to write an opinion that would affirm in this case where we've got a key prosecution witness on issues material to sentencing and a written cooperation agreement. I mean, how do we say that's not material under Brady? I think it would be for many of the same, essentially the same reasons that this court reached the same conclusions in Morris and in Braun. In Braun, at page 921, I note the court expressly said that the prosecution did not disclose to the jury that the testifying witness there had a plea agreement. And yet the witness there testified to the nature of the incentive, that he was hoping that it would affect his sentence. And really the same thing happened here. Michael acknowledged repeatedly that he was testifying because he was hoping to get a time cut. The defendant, either in his brief or this morning or this afternoon, has not identified how the plea agreement would weigh or would alter those incentives. All he's left with then is arguing that he could use it as a specific contradiction to the testimony about whether or not he had a plea agreement. But really that's a very narrow point. It's ancillary to the substance of his testimony. And the context would really be the district court and his own attorney. And I'd push back as well on the defendant's argument that this was a central witness. Certainly it is important. He's a co-defendant. But the government had half a dozen lines of evidence besides Michael's testimony supporting the district court's findings. There was the case agent's testimony, fingerprint evidence from the package, statement from the passenger, statements from multiple other witnesses, and this defendant's own shifting story and his own demeanor during the safety belt proffer. And to be sure, the district court credited Michael's testimony. But it did so only after reviewing all the other evidence and finding that Michael's testimony, unlike this defendant's testimony, was consistent with all the other evidence in the record. And so when we look at materiality on plain error review, the question is if we throw in just one additional detail, the witness's plea agreement, would that create a reasonable probability of a different outcome? And beyond that, would it be so clear that the district court would have clearly erred in finding otherwise? And that's just not the case when we have significant impeachment. The defendant had already, I'm sorry, the witness admitted his self-interest. In the first instance, there is abundant corroborating evidence before the district court in addition. And so this one additional detail would not have created a reasonable probability of a different outcome. We've briefly touched on suppression, but basically the issue there is that even at the point where the plea agreement came up at the sentencing hearing, the defendant still hadn't, the district court invited the defendant to make any, to So we had ample opportunity to ask the district court at that point to reopen the evidence, to reconsider its findings. This court has held in similar circumstances that dealt with findings on a motion to suppress, that even where the district court has made factual findings that denied the motion, that the opportunity to seek reconsideration and reopening of the evidence means that there's no Brady violation on, especially on plain error review. I see that my time is short, so I'm happy to answer any questions your honors may have about the sentencing argument, about the inconsistent findings. The district court's findings were amply supported and there's simply no inconsistency between the obstruction finding on the one hand and finding that regardless, the defendant's conduct was not innocent, whether it was to obstruct Michael's arrest, his own, or just failing to yield, it was not innocent. And so that was something that the court could consider at the 3553A stage. Unless your honors have further questions. Thank you. Thank you, Mr. Keenstra. Mr. Mose. Thank you, your honors. Two points on rebuttal. First, unlike the government's contention, Dilbert's counsel did move for disclosures prior to the sentencing hearing, although not regarding the specific plea agreement that was not disclosed. Dilbert's attorney did move for any disclosures consistent with the proffer regarding Michael's testimony and his cooperation with the government at sentencing, specifically on the grounds that waiting for sentencing to announce and to let Dilbert know that Michael was testifying would be too late to properly prepare cross-examination. So although not the explicit movement for that, even though it existed, he did move for Brady disclosures prior to sentencing. And additionally, our second point on the materiality and prejudicial nature of the nondisclosure, unlike in U.S. v. Morris or Brown v. Powell, both of those cooperating witnesses testified about an agreement, testified that there was an agreement, and about the benefits that the government was at least offering, if not promised. Whereas in this case, the exact opposite happened. Michael testified that there was no agreement, that he had pled open and was simply hoping for a time cut. That is very different than hoping for a time cut because the government has offered one in a signed and executed plea agreement. And additionally, on the prejudice point, Michael's testimony is not, as the government characterizes it, cumulative and non-meaningful. The other evidence and lines of evidence cited were purely about the crime itself and, for example, the amount of meth charged and that Gilbert's fingerprints were on it. And finally, Gilbert's shifty testimony, as the government puts it, is only shifty with Michael's credible testimony as a baseline. So it all does come back to the credibility rulings. With that, Your Honors, we would ask you to remand for resentencing. Thank you. Mr. Mose, don't go away yet because we want to thank you and your professor for the very, very fine presentation and for taking on this case. What year are you in? I am going to be a 3L. Yeah, in the fall. Wow. My goodness. This was it, first time. So thank you. That was so very exciting and many, many thanks. And of course, many thanks to Mr. Keenstra and the government as well. And the case will be taken under advisement and this court will be in recess until tomorrow morning at 930. Thank you, everyone.